**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| MOBIUS RISK GROUP, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-10-1708 |
| | § | |
| GLOBAL CLEAN ENERGY HOLDINGS, INC., *et al*., | § | |
| | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

This is a breach of contract case. The plaintiff, Mobius Risk Group, and third-party defendant Eric Melvin (together, "Mobius"), have moved for partial summary judgment on defendant Global Clean Energy Holdings's counterclaim. (Docket Entry No. 62). Mobius argues that Global Clean cannot recover certain damages it has alleged—$999,360 for purchasing certain land in Mexico known as the Jatropha Farm at a price above its fair market value; $33,739.71 for interest accrued in connection with the purchase of the Jatropha Farm; and $236,500 for purchasing unnecessary equipment related to the land purchase—because entities other than Global Clean incurred these costs. This court held argument on the motion. Based on the motion and response, the pleadings and the parties' submissions, the arguments of counsel, and the applicable law, this court grants Mobius's motion. The reasons are explained below.

**I.     Background**

Mobius and Global Clean entered into a written contract under which Mobius agreed to manage a research and production program for using seed oil as a biofuel. At the time, Melvin was a director of Global Clean. Under the agreement, Global Clean was to pay Mobius a fixed retainer

of $45,000.00 per month for twelve months. The agreement provided for automatic renewal after twelve months, but either party could send notice terminating the agreement sixty days before the end of the twelve-month period or before the end of any six-month renewal period. (Docket Entry No. 1, Ex. A).

Global Clean made the monthly payments from August 2007 until February 2008 and then stopped. The initial twelve-month period ended "[i]n or about August 2008." (Docket Entry No. 7 at 3). Mobius alleges that because Global Clean failed to provide notice terminating the agreement sixty days before the twelve-month period expired, the agreement automatically renewed for an additional six months. Mobius asserts that it is entitled to contract damages for Global Clean's failure to pay the retainer from March 2008 until August 2008 of the initial twelve-month term, and for Global Clean's failure to pay the retainer from August 2008 to January 2009 of the subsequent six-month term.

Global Clean counterclaimed, asserting a breach of contract claim against Mobius and a breach of fiduciary duty claim against Melvin and claiming damages "not less than $2,936,204.70." (Docket Entry No. 25 at 9, 11). This amount includes several categories of damages, three of which are relevant to Mobius's present partial summary judgment motion. First, Global Clean claims damages for purchasing the Jatropha Farm. Global Clean alleges that it purchased this land "on the recommendation and evaluation of Mobius, at a cost of at least $999,360.00 more than the actual value of the land." (*Id.* at 4). Second, Global Clean claims damages for interest accrued in connection with the purchase of the land—both "Accrued Interest on Mortgage Note" and "Accrued Preferred Interest on Capital Contributions"—in the amount of $33,739.71.[1] (Docket Entry No. 62,

---

[1] Mobius's motion states that Global Clean claims "$337,397.10 for alleged delay damages attributed to interest amounts accrued," (Docket Entry No. 62 at 2), but the evidence submitted by Mobius indicates that the correct amount

2

Ex. A-5 at 1, 4). Third, Global Clean claims $236,500 in damages for purchasing unnecessary equipment "at the direction of Mobius" from Savannah Forestry Equipment, LLC. (Docket Entry No. 25 at 4).

In its motion for partial summary judgment, Mobius argues that Global Clean may not recover the three types of damages outlined above because Global Clean "has not borne, paid, or incurred any of these alleged damages." (Docket Entry No. 62 at 2). In support of its motion, Mobius submitted evidence showing that entities other than Global Clean purchased the Jatropha Farm and the related equipment. Global Clean's CEO, Richard Palmer, testified at his deposition that Asideros Globales Corporativo, a Mexican corporation separate and distinct from Global Clean, purchased the Jatropha Farm. (Docket Entry No. 62, Ex. A at 37, 48–50). Consistent with Palmer's testimony, Asideros Globales executed a promissory note for $2,051,282, the purchase price of the land, which obligates Asideros Globales to repay this sum, together with all accrued interest, on or before April 23, 2018. (*Id.*, Ex. D). Palmer also testified that GCE Mexico I, LLC, another Mexican entity, purchased the allegedly unnecessary equipment from Savannah Forestry. (*Id.*, Ex. A at 289–92, 294–99).

In response to Mobius's motion, Global Clean submitted evidence showing that Asideros Globales purchased the Jatropha Farm and GCE Mexico purchased the Savannah Forestry equipment. This evidence also shows that Global Clean owned some of the stock of Asideros Globales and GCE Mexico and their financial statements are consolidated. Global Clean also argues that because Global Clean exercises control over the internal business and day to day operations of

---

is $33,739.71.

its subsidiaries, GCE Mexico I and Asideros, the companies should be viewed as "fuse[d] . . . together as one." (Docket Entry No. 73 at 2).

As to the relationship between Global Clean and the two Mexican entities, Global Clean's annual Form 10-K report filed with the S.E.C. for fiscal year 2008 states:

> Effective April 23, 2008, the Company entered into a limited liability company agreement to form GCE Mexico I, LLC (GCE Mexico) along with six unaffiliated investors. The Company owns 50% of the common membership interest of GCE Mexico and five of the unaffiliated investors own the other 50% of the common membership interest. Additionally, a total of 1,000 preferred membership units were issued to two of the unaffiliated investors. GCE Mexico owns a 99% interest in Asideros Globales Corporativo, (Asideros) a corporation newly organized under the laws of Mexico, and the Company owns the remaining 1% directly. Commencing in April 2008, the Company has consolidated the financial statements of GCE Mexico and Asideros with its financial statements. The ownership interests of the six unaffiliated investors in GCE Mexico is presented as Minority Interest in the accompanying consolidated financial statements. GCE Mexico was organized primarily to, among other things, acquire land in Mexico through Asideros for the cultivation of the Jatropha plant.

(Docket Entry No. 68, Ex. 1 at 7). As to the purchase of the Jatropha Farm, the Form 10-K states that "two Preferred Members . . . directly funded the purchase by [GCE Mexico] of the [Jatropha Farm] by making a $2,051,282 loan to pay the purchase price of that land. The land was acquired in the name of GCE LLC's Mexico subsidiary and is secured by a mortgage in the amount of $2,051,282 in favor of the Preferred Members." (*Id.* at 6). As to the purchase of the Savannah Forestry equipment, the report states that "[c]ommencing in June 2008, GCE Mexico purchased certain equipment for purposes of rapidly clearing the land, preparing the land for planting, and actually planting the Jatropha trees." (*Id.* at 8).

## II. The Legal Standards

### A. Summary Judgment

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the

light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

### B. Breach of Contract

The parties' agreement has a choice-of-law provision specifying Texas law. (Docket Entry No. 1, Ex. A at 5). Under Texas law, "'[t]he essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.'" *Am. Gen. Life Ins. Co. v. Kirsh*, 378 F. App'x 379, 383 (5th Cir. 2010) (quoting *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007)).

### C. Breach of Fiduciary Duty

Under Texas law, "[t]he elements of breach of fiduciary duty are (1) the existence of a fiduciary relationship, and (2) a breach of duty by the fiduciary (3) that causes damages to the client or improper benefit to the fiduciary." *First State Bank of Mesquite v. Bellinger & Dewolf, LLP*, 342 S.W.3d 142, 150 (Tex. App.—Houston 2011, no pet.); *see also Martin v. Estates of Russell Creek Homeowners Ass'n, Inc.*, 251 S.W.3d 899, 903 (Tex. App.—Dallas 2008, no pet.) (stating that damages is a "necessary" element of a breach of fiduciary duty claim).

## III. Analysis

Mobius argues that it is entitled to partial summary judgment on that portion of Global Clean's claims that seeks damages for the purchase of the Jatropha Farm, for interest accrued in

connection with this purchase, and for the purchase of allegedly unnecessary equipment. The court agrees. To recover damages, Global Clean must prove damages. *See Kirsh*, 378 F. App'x at 383; *Martin*, 251 S.W.3d at 903. Global Clean did not incur costs for purchasing the Jatropha Farm, for interest accrued in connection with this purchase, and for purchasing equipment. The record evidence shows that Asideros Globales, a Mexican corporation, purchased the Jatropha Farm; that Asideros Globales was responsible for accrued interest in connection with this purchase; and that GCE Mexico, another Mexican entity, purchased the equipment. Because Global Clean purchased neither the Jatropha Farm nor the equipment, Global Clean has not suffered damages in connection with these purchases. Without damages, Global Clean cannot prove an essential element of its claims and Mobius is entitled to judgment as a matter of law. *See Walker v. Geithner*, 400 F. App'x 914, 916 (5th Cir. 2010) ("[A] movant may obtain summary judgment if he can prove there is no evidence to support one or more essential elements of the non-moving party's claim.").

Global Clean argues that the damages incurred by the two Mexican entities are its own because it owns 50% of GCE Mexico and 51% of Asideros Globales and because it has consolidated its financial statements with those of the Mexican entities. This argument is unpersuasive. In Texas, "[c]ourts will recognize the separate identities of corporations even when one corporation dominates or controls another, or even treats the other corporation as a mere department, instrumentality, or agency of the other." *Sitaram v. Aetna U.S. Healthcare of N. Tex., Inc.*, 152 S.W.3d 817, 825 (Tex. App.—Texarkana 2004, no pet.). "This presumption applies to a parent corporation and its separate corporate subsidiary as well, presuming, again, they are distinct legal entities." *Id.* Three relevant legal consequences flow from this presumption. First, "a parent corporation is not liable for the debts of its subsidiaries." *Drilltec Techs., Inc. v. Remp*, 64 S.W.3d 212, 217 (Tex. App.—Houston

2001, no pet.); *see also United States v. Bestfoods*, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." (citation omitted)). Second, a parent corporation does not have "any property interest in its subsidiary's assets." *Drilltech Techs.*, 64 S.W.3d at 217; *see also Sun Towers, Inc. v. Heckler*, 725 F.2d 315, 331 (5th Cir. 1984) ("It is an elementary principle of corporate law that a corporation and its stockholders are separate entities and that the title to corporate property is vested in the corporation and not in the owners of the corporate stock"). Third, and most relevant to Mobius's motion, a corporation cannot sue to recover costs incurred by its subsidiaries; "a parent corporation cannot create a subsidiary and then 'ignore its separate corporate existence whenever it would be advantageous to the parent.'" *Pennsylvania Eng'g Corp. v. Islip Res. Recovery Agency*, 710 F. Supp. 456, 465 (E.D.N.Y. 1989) (citation and alteration omitted); *cf. Singh v. Duane Morris, L.L.P.*, 338 S.W.3d 176, 181 (Tex. App.—Houston 2011, pet. filed) ("[A]n individual shareholder, even a sole shareholder such as appellant, has no standing to recover personally for damages incurred by the corporation."); *Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex. 1990) ("Ordinarily, the cause of action for injury to the property of a corporation, or the impairment or destruction of its business, is vested in the corporation, as distinguished from its stockholders, even though it may result indirectly in loss of earnings to the stockholders.").

Relying on *Zamarron v. Shinko Wire Company*, 125 S.W.3d 132 (Tex. App.—Houston 2003, pet. denied) and *Consolidated Rock Products Co. v. Du Bois*, 312 U.S. 510 (1941), Global Clean argues that "[p]roof of control over the internal business operations and affairs of a subsidiary by a parent fuses them together as one," so that the subsidiary's damages are the parent's own. (Docket

Entry No. 73 at 2). Both *Zamarron* and *Consolidated Rock* are inapposite. In *Zamarron*, the court considered whether a parent corporation was subject to general personal jurisdiction in a state because of its subsidiary's presence and business activities in that state. 125 S.W.3d at 141. The court stated that "proof of control by the parent over the internal business operations and affairs of the subsidiary" may fuse the two entities "'for jurisdictional purposes.'" *Id.* at 142 (citation omitted); *see also BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 799 (Tex. 2002) ("To 'fuse' the parent company and its subsidiary *for jurisdictional purposes*, the plaintiffs must prove the parent controls the internal business operations and affairs of the subsidiary." (emphasis added)). In *Consolidated Rock*, the Court addressed whether a parent corporation was liable for the acts of its subsidiaries. Implicitly recognizing that a parent is generally not liable for its subsidiaries' acts, the Court held that "where a holding company directly intervenes in the management of its subsidiaries so as to treat them as mere departments of its own enterprise, it is responsible for the obligations of those subsidiaries incurred or arising during its management." 312 U.S. at 524; *see also Bestfoods*, 524 U.S. at 62 ("[T]here is an equally fundamental principle of corporate law, applicable to the parent-subsidiary relationship as well as generally, that the corporate veil may be pierced and the shareholder held liable for the corporation's conduct when, *inter alia*, the corporate form would otherwise be misused to accomplish certain wrongful purposes, most notably fraud, on the shareholder's behalf.").

*Zamarron* and *Consolidated Rock*, the cases Global Clean relies on, do not address whether or when a parent company may recover damages incurred by its subsidiaries. Courts that have addressed this issue have consistently held that a parent may not do so. *See, e.g., Am. Capital Corp. v. FDIC*, 472 F.3d 859, 865 (Fed. Cir. 2006) ("We have 'regularly acknowledged the legal

distinction between a corporation and its shareholders and rejected claims by shareholders to assert a breach of contract claim on behalf of the corporation.'" (citation omitted)); *Centra, Inc. v. Chandler Ins. Co.*, Nos. 98–6134, 98–6145, 98–6164, 98–6166, 2000 WL 1277672, at *9 (10th Cir. Sept. 7, 2000) (holding that the district court properly excluded evidence of damages allegedly incurred by the plaintiff's subsidiaries because "they were not parties to the litigation" and "did not qualify as real parties in interest"); *Martens v. Barrett*, 245 F.2d 844, 846 (5th Cir. 1957) ("[W]here the business or property allegedly interfered with by forbidden practices is that being done and carried on by a corporation, it is that corporation alone . . . who has a right of recovery, even though in an economic sense real harm may well be sustained [by other entities as a result] . . . of such wrongful acts."); *Feinberg v. Katz*, No. 99 CIV. 45(CSH), 2002 WL 1751135, at *6 (S.D.N.Y. July 26, 2002) (holding that a parent company "cannot bring claims to recover damages incurred by its subsidiary"); *Diesel Sys. v. Yip Shing Diesel Eng'g Co.*, 861 F. Supp. 179, 181 (E.D.N.Y.1994) ("A corporation does not have standing to assert claims belonging to a related corporation, simply because their business is intertwined."); *Pennsylvania Eng'g*, 710 F. Supp. at 465 ("Courts will not allow a parent corporation to pierce the corporate veil it set up for its own benefit in order to advance the claims of its subsidiary."). Under the governing law, Global Clean may not sue to recover damages incurred by Asideros Globales and GCE Mexico.[2]

---

[2] Global Glean also argues that Mobius did not present any evidence in support of its motion for partial summary judgment because it failed to properly authenticate the exhibits attached to its motion. Because the court has granted Mobius's subsequent motion to supplement, (Docket Entry No. 69), which included an affidavit authenticating the exhibits, Global Clean's argument is moot.

## IV. Conclusion

Because, as a matter of law, Global Clean cannot recover damages incurred by Asideros Globales and GCE Mexico, Mobius's motion for partial summary judgment is granted.

SIGNED on August 15, 2011, at Houston, Texas.

Lee H. Rosenthal
United States District Judge