**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| MOBIUS RISK GROUP, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-10-1708 |
| | § | |
| GLOBAL CLEAN ENERGY HOLDINGS, | § | |
| INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

This is a breach of contract case. The plaintiff, Mobius Risk Group, LLC, and the third-party defendant, Eric Melvin, have moved to strike and dismiss the fraud claims asserted against them in Global Clean Energy Holdings's "Third Amended Counterclaim and Third-Party Claim." (Docket Entry No. 100.) Mobius argues that the fraud counterclaim should be dismissed under Federal Rule of Civil Procedure 12(b)(6) because Global Clean's pleading fails to state a plausible claim. Melvin argues that the third-party fraud claim should be struck under Rules 12(f), 15, and 16 because Global Clean asserted the claim after the deadline for filing motions for leave to amend pleadings, and without showing good cause or seeking leave to amend. In the alternative, Melvin argues that the third-party fraud claim should be dismissed for failure to state a claim under Rule 12(b)(6). Global Clean responded to the motions, (Docket Entry No. 102), and Mobius and Melvin replied, (Docket Entry No. 103).

The court heard oral argument on the motions. Based on the pleadings; the motions, response, and reply; the arguments of counsel; and the applicable law, this court grants Melvin's

motion to strike the third-party fraud claim and denies Mobius's motion to dismiss the fraud counterclaim.  The reasons for these rulings are explained below.

## I.     Background

Mobius and Global Clean entered into a services agreement under which Mobius agreed to manage a research and production program for using seed oil as a biofuel.  At the time, Melvin was a director of Global Clean.  Under the agreement, Global Clean was to pay Mobius a fixed retainer of $45,000.00 per month for twelve months.  The agreement provided for automatic renewal after twelve months, but either party could send notice terminating the agreement sixty days before the end of the twelve-month period or before the end of any six-month renewal period.  (Docket Entry No. 1, Ex. A.)

Global Clean made the monthly payments from August 2007 until February 2008 and then stopped.  The initial twelve-month period ended "[i]n or about August 2008."  (Docket Entry No. 43-3, at 3.)  In May 2010, Mobius sued for breach of contract, alleging that because Global Clean failed to provide notice terminating the agreement sixty days before the twelve-month period expired, the agreement automatically renewed for an additional six months.  Mobius asserted that it is entitled to contract damages for Global Clean's failure to pay the retainer from March 2008 until August 2008 of the initial twelve-month term, and for Global Clean's failure to pay the retainer from August 2008 to January 2009 of the subsequent six-month term.  (*Id.*)  Global Clean counterclaimed, alleging that Mobius failed to perform the contract, causing damages estimated at $2,936,204.70.  Global Clean alleged that the parties' agreement did not renew in August 2008, despite the lack of a timely termination notice, because of Mobius's prior breach.  (Docket Entry No. 25, at 3–4.)

Global Clean's First Amended Answer, Counterclaim, and Third-Party Claim asserted a breach of contract claim against Mobius and a third-party breach of fiduciary duty claim against

2

Melvin.  (Docket Entry No. 25, at 9–11.)  On June 24, 2011, Global Clean filed a Second Amended Answer, Counterclaim, and Third-Party Claim, which added a fraud counterclaim against Mobius. (Docket Entry No. 64, at 9–13.)  That counterclaim alleged that when the parties executed the services agreement, Mobius induced Global Clean to do so by misrepresenting to Global Clean that Mobius was qualified to perform under the agreement.  (*Id.*)  The fraud counterclaim was filed more than six months after the November 5, 2010 deadline for motions for leave to amend pleadings set in this court's modified scheduling order, and without seeking leave to amend.

Mobius moved to strike the fraud counterclaim, arguing that it was filed late and without leave to amend, and that it failed to state a claim under Rule 12(b)(6).  At a motion hearing, this court cautioned Global Clean that it should have sought leave to amend before filing the fraud counterclaim.  (Docket Entry No. 115, at 16.)  The court then dismissed the fraud counterclaim because Global Clean failed to allege sufficient facts supporting the inference that Mobius did not intend to perform its obligations under the parties' agreement—a necessary element of fraudulent inducement under Texas law in breach of contract cases.  But the court granted Global Clean leave to amend to attempt to state a viable fraud counterclaim.  (*Id.* at 25.)

On August 17, 2011, Global Clean filed a Third Amended Counterclaim and Third-Party Claim.  (Docket Entry No. 98.)  In addition to reasserting the fraud counterclaim against Mobius, the third amended pleading added a third-party fraud claim against Melvin that restated the allegations of the fraud counterclaim.  (*Id.* at 8–11.)  Global Clean did not seek leave to amend to assert the third-party fraud claim against Melvin.

Mobius and Melvin have moved to dismiss and strike the fraud claims.  (Docket Entry No. 100.)  Mobius argues that the Third Amended Counterclaim and Third-Party Claim did not cure the defect of the second amended pleading.  According to Mobius, Global Clean has not alleged facts

3

supporting the inference that Mobius did not intend to perform its obligations under the services agreement when it was executed.  (*Id.* at 3–5.)  Melvin argues that the third-party fraud claim should be struck because Global Clean asserted the claim after the deadline for filing motions for leave to amend pleadings and without showing good cause or seeking leave to amend.  Melvin contends that when this court dismissed the fraud counterclaim in Global Clean's second amended pleading, the court granted leave to amend to attempt to state a viable fraud counterclaim against Mobius, not to add a third-party fraud claim against Melvin.[1]  (*Id.* at 2.)  Global Clean responds that it sufficiently alleged that Mobius did not intend to perform its obligations under the services agreement when it was executed.  Global Clean also argues that the third-party fraud claim against Melvin is not a new claim because the underlying allegations appeared in the second amended counterclaim.  (Docket Entry No. 102, at 3–5.)

## II.    The Motion to Dismiss

### A.    Rule 12(b)(6)

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b) (6).  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  The federal pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me

---

[1] In the alternative, Melvin argues that the third-party fraud claim should be dismissed under Rule 12(b)(6) for the same reasons Mobius urges.

accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."  *Id.* (internal quotation marks and citation omitted).

> ### B.    Analysis

Under Texas law, "[a] fraud cause of action requires 'a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury.'" *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998) (quoting *Sears, Roebuck & Co. v. Meadows*, 877 S.W.2d 281, 282 (Tex. 1994)).  "As a general rule, the failure to perform the terms of a contract is a breach of contract, not a tort.  However, when one party enters into a contract with no intention of performing, that misrepresentation may give rise to an action in fraud." *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 597 (Tex. 1992) (citations omitted).  "A failure to perform a future act as promised is fraud only when there was no intent to perform the act at the time the promise was made." *Dynegy, Inc. v. Yates*, 345 S.W.3d 516, 532 (Tex. App.—San Antonio 2011, no pet.).  "Failure to perform, standing alone, is no evidence of the promisor's intent not to perform when the promise was made, but a circumstance to be considered with other facts to establish intent." *Bank One, Texas, N.A. v. Stewart*, 967 S.W.2d 419, 444 (Tex. App.—Houston [14th Dist.] 1998, pet. denied).  "Cases in which a party was induced into signing a contract by a promise that the promisor had no intention of keeping at the time he made the promise are to be distinguished from situations in which a party has made a promise with an existent intent to fulfill its terms and who then changes his mind and refuses to perform; otherwise, every breach of contract would involve fraud." *Oliver v. Rogers*, 976 S.W.2d 792, 804 (Tex. App.—Houston [1st Dist] 1998, pet. denied).

5

Mobius argues that the fraud counterclaim should be dismissed under Rule 12(b)(6) because Global Clean's third amended pleading fails to sufficiently allege that Mobius did not intend to perform its obligations under the services agreement when it was signed.  Global Clean has alleged that "Mobius, through its Chief Executive Officer, Eric J. Melvin . . . represented to Global that Mobius had the qualifications and capability necessary to perform its obligations [under] the Services Agreement."  (Docket Entry No. 98, at 2.)  Global Clean further alleged that

> Melvin's representations that Mobius had the capability and qualifications to perform its obligations under the Services Agreement were false when they were made and were made with no intention of performing them.  In fact, at the time Melvin represented to Global that Mobius was capable of performing the Services stated under the Services Agreement, Melvin knew that Mobius could not perform under the Services Agreement.  Mobius did not have any employees with experience or education in farming, plant sciences or Jatropha.  Further, at the time of the representations, Mobius had no intention of hiring any employee with any experience or education in farming, plant sciences or Jatropha.  At no time did Mobius ever hire any employee who was competent to provide the services Mobius had pledged to provide.  From the outset, and by design, Mobius intentionally understaffed the Global Project.

(*Id.* at 4.)  The allegations that Mobius neither had nor intended to have employees with the qualifications and experience needed to perform its obligations under the services agreement are inconsistent with Melvin's representation that Mobius "had the qualifications . . . necessary to perform its obligations [under] the Services Agreement."  The allegations support an inference that Mobius promised to perform obligations it knew it could not perform and that Mobius did not intend to perform its contractual obligations when the representation was made.  Contrary to Mobius's argument, Global Clean has sufficiently alleged Mobius's intent not to perform to state a plausible fraud claim.

Citing *Bank One*, Mobius argues that "partial performance under an agreement conclusively refutes the contention that there was no intent to perform." (Docket Entry No. 100, at 5.) Mobius contends that because Global Clean "has admitted Mobius's [partial] performance under the Services Agreement numerous times, including in its filings with the Securities and Exchange Commission," the fraud counterclaim fails as a matter of law. (*Id.*) In *Bank One*, the Texas Court of Appeals considered whether the evidence presented at trial was sufficient to support the jury's finding of fraud in connection with the execution of a promissory note. 967 S.W.2d at 443. The appellants argued that no evidence had been presented from which the jury could conclude that they signed the promissory note with no intent to perform. *Id.* at 444. Relying on the appellants' partial performance on the note, the lack of testimony that the appellants did not intend to fully perform, and testimony that the appellants "did not contemplate not having to pay on the note," the court reversed the jury's verdict. *Id.* at 445. The court distinguished a prior case that upheld a jury's finding of fraud despite partial performance on a promissory note:

> *Dodson*, however, is factually distinguishable from this case. *Dodson* involved a fraud claim brought by two associates who co-signed a promissory note with Dodson in exchange for Dodson's promise to assign to them an option to acquire an interest in a development corporation and to assume the full obligation of the promissory note if the development corporation were not formed. When Dodson failed to perform as promised, the two co-signers sued him for breach of contract and fraud. Although Dodson initially paid the interest on the note, he testified that he never intended to pay on the note unless the project was successful and that he only intended to pay one-third of the interest and principal although he did not disclose his intent to the other co-signers. This court found Dodson's testimony to reflect a present intent not to perform at the time he entered the contract giving rise to actionable fraud.

*Id.* at 445–46 (internal citations omitted).

7

Contrary to Mobius's argument, *Bank One* did not hold that partial performance under an agreement conclusively or always refutes the contention that there was no intent to perform.  *Bank One* recognized that evidence of partial performance will not preclude a finding of fraud if other evidence indicates an intent not to fully perform.  Even assuming that Global Clean has admitted that Mobius partially performed under the services agreement, *Bank One* does not support the conclusion that the fraud claim fails as a matter of law.  Mobius's motion to dismiss the fraud claim against it is denied.

**III.   The Motion to Strike**

**A.   Leave to Amend**

Rule 15(a) provides that a party may amend its pleading once without seeking leave of court or the consent of the adverse party before a responsive pleading is served.  FED. R. CIV. P. 15(a).  After a responsive pleading is served, the party may amend only "with the opposing party's written consent or the court's leave."  *Id.*  Although a court "should freely give leave when justice so requires," *id.*, leave to amend "is not automatic," *Matagorda Ventures, Inc. v. Travelers Lloyds Ins. Co.*, 203 F. Supp. 2d 704, 718 (S.D. Tex. 2000) (citing *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)).  A district court reviewing a motion to amend pleadings under Rule 15(a) may consider factors such as "undue delay, bad faith or dilatory motive . . . undue prejudice to the opposing party, and futility of amendment."  *In re Southmark Corp.*, 88 F.3d 311, 314–15 (5th Cir. 1996).

Rule 16(b) states that scheduling orders "may be modified only for good cause and with the judge's consent."  The "good cause" standard, rather than the "freely given" standard of Rule 15(a), governs a motion to amend which is filed after the deadline set in the scheduling order.  *See Sw. Bell*

*Tel. Co. v. City of El Paso*, 346 F.3d 541, 546–47 (5th Cir. 2003); *S & W Enters., LLC v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535–36 (5th Cir. 2003); *see also Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000); *E. Minerals & Chems. Co. v. Mahan*, 225 F.3d 330, 340 (3d Cir. 2000); *In re Milk Prods. Antitrust Litig.*, 195 F.3d 430, 437 (8th Cir. 1999); *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998) (per curiam); *Riofrio Anda v. Ralston Purina, Co.*, 959 F.2d 1149, 1154–55 (1st Cir. 1992); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–08 (9th Cir. 1992); *SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1518 (10th Cir. 1990). Trial courts need "broad discretion to preserve the integrity and purpose of the pretrial order." *Geiserman v. MacDonald*, 893 F.2d 787, 790 (5th Cir. 1990) (quotations omitted). "If we considered only Rule 15(a) without regard to Rule 16(b), we would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure." *Sosa*, 133 F.3d at 1419; *see also Johnson*, 975 F.2d at 610 ("Disregard of the [scheduling] order would undermine the court's ability to control its docket, [and] disrupt the agreed-upon course of the litigation."); *Riofrio Anda*, 959 F.2d at 1155 (finding that permitting amendment under Rule 15(a) after scheduling order cutoff "would have nullified the purpose of Rule 16(b)(1)"). If amending the pleadings would, in effect, require amendment of the scheduling order, both Rule 15 and Rule 16 apply.

Rule 16(b)'s "good cause" standard focuses on the diligence of the party asking the court to modify the scheduling order. *Parker*, 204 F.3d at 340; *In re Milk Prods.*, 195 F.3d at 437; *Johnson*, 975 F.2d at 609. The absence of prejudice to the nonmovant is relevant to Rule 15(a) but does not satisfy the "good cause" requirement. *Tschantz v. McCann*, 160 F.R.D. 568, 571 (N.D. Ind. 1995). "The good cause standard requires the 'party seeking relief to show that the deadlines cannot

9

reasonably be met despite the diligence of the party needing the extension.'" *S & W Enters.*, 315 F.3d at 535 (quoting 6A CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 1522.1 (2d ed. 1990)).  In the context of a motion for leave to amend, the court may deny the motion if the movant "knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint." *Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1027 (10th Cir. 1994) (quotations omitted); *see also Pope v. MCI Telecomms. Corp.*, 937 F.2d 258, 263 (5th Cir. 1991) (denying, under Rule 15(a)'s more lenient standard, a late-filed motion to amend a complaint to include claims based on the same facts); *Sosa*, 133 F.3d at 1419 (denying leave to amend under Rule 16(b) when the facts were known to the plaintiff when he filed the first complaint); *Parker*, 204 F.3d at 340–41 (same).

### B.    Analysis

Melvin argues that the third-party fraud claim against him should be struck because it was filed late and without seeking leave to amend.  This court's modified scheduling order set November 5, 2010 as the deadline for filing motions for leave to amend pleadings and stated that "[p]arties filing motions after this deadline must show good cause."  (Docket Entry No. 39, at 1.)  Global Clean filed its proposed third-party fraud claim on August 17, 2011, without seeking leave to amend. This court previously cautioned Global Clean that it should have sought leave to amend before it filed its fraud counterclaim against Mobius.  The third-party fraud claim was filed after the fraud counterclaim.

Because Global Clean has not filed a motion for leave to amend pleadings before asserting the third-party fraud claim, this court will construe Global Clean's response to Melvin's motion to strike as a motion for leave to amend.  Under the modified scheduling order and Rule 16(b), Global

Clean must show "good cause" for filing an untimely motion for leave to amend.  The good cause standard "requires the party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension."  *S&W Enters.*, 315 F.3d at 535 (internal quotation marks omitted).

Global Clean argues that "the allegations that form the basis of [its third-party] fraud claim were included in [its] Second Amended Counterclaim" and that it "did not seek permission from the Court to re-plead allegations that were previously pled."  (Docket Entry No. 102, at 4–5.)  Global Clean is correct that the allegations that form the basis of the third-party fraud claim were included in its second amended pleading.  But the second amended pleading did not include a third-party fraud claim against Melvin in addition to the fraud counterclaim against Mobius; the second amended pleading asserted only a third-party breach of fiduciary duty claim.  Global Clean's argument that the allegations that form the basis of its third-party fraud claim are not new does not establish "good cause."  To the contrary, this argument demonstrates that Global Clean could have asserted the third-party fraud claim at the time it asserted the fraud counterclaim.  To add such a claim against an individual defendant would trigger additional motions, responses, and delays.  Melvin's motion to strike is granted.

## IV.    Conclusion

Mobius's motion to dismiss the fraud counterclaim is denied.  Melvin's motion to strike the third-party fraud claim is granted.

SIGNED on February 16, 2012, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge

11