**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| MOBIUS RISK GROUP, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-10-1708 |
| | § | |
| GLOBAL CLEAN ENERGY HOLDINGS, | § | |
| INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

Richard Palmer, a California resident and one of the defendants in this case, has moved under

Federal Rule of Civil Procedure 12(b)(2) to dismiss the fraud claim asserted against him by the

plaintiff, Mobius Risk Group, for lack of personal jurisdiction.  (Docket Entry No. 86.)  Palmer

argues that he is not subject to general jurisdiction in Texas because he lacks continuous and

systematic contacts with the state and that he is not subject to specific jurisdiction because he has

not conducted any activity in Texas related to the fraud claim.  Mobius responded to the motion,

(Docket Entry No. 93), and Palmer replied, (Docket Entry No. 101).  Based on the pleadings; the

motion, response, and reply; and the relevant law, this court denies Palmer's motion.  The reasons

for this ruling are explained below.

**I.      Background**

This is a breach of contract case.  Mobius Risk Group, a Texas limited liability company,

and Global Clean Energy Holdings, a Utah corporation with its principal place of business in

California, entered into a Services Agreement under which Mobius agreed to manage a research and

production program for using seed oil as a biofuel.  Under the Agreement, Global Clean was to pay

Mobius a fixed retainer of $45,000.00 per month for twelve months.  The Agreement provided for automatic renewal after twelve months, but either party could send a termination notice sixty days before the end of the twelve-month period or before the end of any six-month renewal period.

Global Clean made the monthly payments from August 2007 until February 2008 and then stopped.  The initial twelve-month period ended in August 2008.  In May 2010, Mobius sued for breach of contract, alleging that because Global Clean failed to provide notice terminating the Agreement sixty days before the twelve-month period expired, the Agreement automatically renewed for an additional six months.  Mobius alleged that it is entitled to contract damages for Global Clean's failure to pay the retainer from March 2008 until August 2008 of the initial twelve-month term, and for Global Clean's failure to pay the retainer from August 2008 to January 2009 of the subsequent six-month term.

Mobius's first amended complaint added a fraud claim against Global Clean and Richard Palmer, Global Clean's CEO.  Mobius alleged that "[w]hile the Services Agreement was in effect, . . . Palmer made oral and written representations to Mobius that payment of amounts due to Mobius from [Global Clean] under the Services Agreement would be made."  (First Am. Compl. ¶ 15.) Mobius alleged that these representations were false, that Palmer knew they were false, that Palmer has made them to induce Mobius to continue performing under the Agreement, and that Mobius relied on the representations by continuing to perform.  (*Id.*)

Palmer has moved to dismiss Mobius's fraud claim for lack of personal jurisdiction.  (Docket Entry No. 86.)  Palmer provides evidence that he is a California resident who does not have offices, bank accounts, employees, or business records in Texas; does not own real property in Texas; does not regularly travel to Texas for business; does not regularly solicit business in Texas; and does not derive substantial revenue from services rendered in this state.  (Docket Entry No. 86-1, at 1–2.)

2

Palmer argues that the absence of such contacts means that he cannot be subject to general jurisdiction in Texas. Palmer also argues that he is not subject to specific, case-linked personal jurisdiction because Mobius's fraud claim is not related to any activity he conducted in Texas. (Docket Entry No. 86, at 6–7.) Citing a Texas Supreme Court decision, *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777 (Tex. 2005), Palmer contends that "[a] plaintiff cannot establish specific personal jurisdiction over a defendant merely by alleging that the defendant made misrepresentations in communications directed to Texas." (Docket Entry No. 101, at 1.)

Mobius responds that this court has both general and specific personal jurisdiction over Palmer. Mobius argues that exercising general jurisdiction over Palmer is proper because he served as an officer and director of Mobius until September 2007, frequently communicated with Mobius employees by telephone and email from 2007 until 2009, and actively participated in an unrelated case in the Southern District of Texas. (Docket Entry No. 93, at 8–9.) Mobius also argues that the exercise of specific jurisdiction is proper because this litigation arose out of oral and written communications that Palmer purposefully directed to Mobius in Texas. (*Id.* at 3–8.)

## II.   The Legal Standards

### A.   Rule 12(b)(2)

When a nonresident defendant challenges personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of demonstrating facts sufficient to support jurisdiction. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985) (citations omitted). "The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Id.* "When the district court rules on a motion to dismiss for lack of personal jurisdiction 'without an evidentiary hearing, the plaintiff may bear his burden by presenting a *prima facie* case that personal jurisdiction is proper.'" *Quick Techs.*,

3

*Inc. v. Sage Grp. PLC*, 313 F.3d 338, 343 (5th Cir. 2002) (quoting *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994)).  The court "must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts." *Stripling v. Jordan Prod. Co.*, *LLC*, 234 F.3d 863, 869 (5th Cir. 2000) (quoting *Latshaw v. Johnson*, 167 F.3d 208, 211 (5th Cir. 1999)).  But the court is not obligated to credit conclusory allegations, even if uncontroverted. *Panda Brandywine Corp. v. Potomac Elec. Power*, 253 F.3d 865, 868 (5th Cir. 2001).

### B.  Personal Jurisdiction

A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if the long-arm statute of the forum state confers personal jurisdiction over that defendant and exercising such jurisdiction is consistent with due process.  *Delgado v. Reef Resort Ltd.*, 364 F.3d 642, 644 (5th Cir. 2004).  Because the Texas long-arm statute confers jurisdiction to the limits of due process, "the two-step inquiry collapses into one federal due process analysis." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008).

Federal due process permits the exercise of personal jurisdiction over a nonresident defendant when the defendant has "minimum contacts" with the forum state such that the exercise of jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice." *Id.*  The "minimum contacts" aspect of the analysis can be established through "contacts that give rise to 'specific' personal jurisdiction" or contacts "that give rise to 'general' personal jurisdiction." *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001).  A court has general jurisdiction over a nonresident defendant "to hear any and all claims" against him when his contacts with the state are so "'continuous and systematic' as to render [him] essentially at home in the forum." *Goodyear Dunlop Tires Operations v. Brown*, 131 S. Ct. 2846, 2851 (2011).  "The 'continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant

4

and a forum.'" *Johnston*, 523 F.3d at 609 (quoting *Submersible Sys., Inc. v. Perforadora Cent., S.A.*, 249 F.3d 413, 419 (5th Cir. 2001)).  "[E]ven repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction."  *Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir. 2002).  "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home."  *Goodyear*, 131 S. Ct. at 2853–54.

"In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'"  *Id.* at 2851 (citation omitted).  A court asks "whether there was 'some act by which the defendant purposefully availed [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'"  *Id.* at 2854 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  Specific jurisdiction exists "when a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities."  *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008) (internal quotations marks omitted).  Though the defendant's contacts with the forum must be more than "random, fortuitous, or attenuated, or of the unilateral activity of another party or third person," even "isolated or sporadic contacts" can support specific jurisdiction "so long as the plaintiff's claim relates to or arises out of those contacts."  *ITL Int'l, Inc. v. Constela, S.A.*, --- F.3d ----, 2012 WL 266987, at *4 (5th Cir. Jan. 31, 2012) (internal quotation marks omitted).

Once a plaintiff has established minimum contacts, the burden shifts to the nonresident defendant to show that asserting jurisdiction would offend traditional notions of fair play and

substantial justice.  *Walk*, 517 F.3d at 245.  "[I]t is incumbent on the defendant to present a compelling case that the presence of some consideration would render jurisdiction unreasonable." *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1068 (5th Cir. 1992).  "In conducting the fairness inquiry, [courts] examine (1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies." *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th Cir. 2006).

## III.  Analysis

### A.   General Jurisdiction

A court may exercise general, all-purpose jurisdiction over a nonresident defendant when the defendant's contacts with the forum state are so "'continuous and systematic' as to render [him] essentially at home" in that state.  *Goodyear*, 131 S. Ct. at 2851.  The Supreme Court's decision in *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952), "remains '[t]he textbook case of general jurisdiction appropriately exercised over a foreign corporation that has not consented to suit in the forum.'"  *Goodyear*, 131 S. Ct. at 2856 (citation omitted).  The Supreme Court has explained that

> [s]ued in Ohio, the defendant in *Perkins* was a Philippine mining corporation that had ceased activities in the Philippines during World War II.  To the extent that the company was conducting any business during and immediately after the Japanese occupation of the Philippines, it was doing so in Ohio: the corporation's president maintained his office there, kept the company files in that office, and supervised from the Ohio office 'the necessarily limited wartime activities of the company.'  Although the claim-in-suit did not arise in Ohio, th[e] Court ruled that it would not violate due process for Ohio to adjudicate the controversy.

6

*Id.* (internal citation omitted).

Palmer's contacts with Texas fall far short of the type of contacts the Supreme Court found sufficient to justify the exercise of general jurisdiction in *Perkins*.  The undisputed record evidence reveals that Palmer is a California resident who does not have offices, bank accounts, employees, or business records in Texas; does not own real property in Texas; does not regularly travel to Texas for business; does not regularly solicit business in Texas; and does not derive substantial revenue from services rendered in this state.

Mobius argues that this court has general jurisdiction over Palmer because he: (1) was an officer and director of Mobius, a Texas-based company, until September 2007; (2) frequently communicated with Mobius employees in Texas by telephone and email from August 2007 until early 2009; (3) was an owner of equity in Mobius until March 2010; and (4) actively participated in recent, unrelated litigation in the Southern District of Texas.  These contacts are insufficient, alone or in combination, to make a nonresident defendant subject to general jurisdiction in the forum state.  The case law requires more contacts and more extensive contacts than Palmer had with Texas to support the exercise of general jurisdiction over him.  *See, e.g., Brokerwood Int'l (U.S.), Inc. v. Cuisine Crotone, Inc.*, 104 F. App'x 376, 382 (5th Cir. 2004) (holding that the defendant's sending demand letters to Louisiana companies, filing a lawsuit in Louisiana, and "marketing itself internationally (including in Louisiana)," "do not reach the level of extensive systematic and continuous contacts required for general jurisdiction"); *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1331 (9th Cir. 1984) ("Making [numerous] telephone calls and sending telexes and letters to Tucson are not activities which support a finding of general jurisdiction."); *Merlino v. Harrahs Entm't, Inc.*, No. 05-CV-6660, 2006 WL 401847, at *3 (E.D. Penn. Feb. 17, 2006) ("Filing even

7

nineteen lawsuits, without more, cannot constitute continuous and systematic activity so as to establish general jurisdiction."); *Swensen v. Murchison*, 507 F. Supp. 509, 512 n.3 (N.D. Cal. 1981) ("Defendant's stock ownership and position as officer or director in California corporations . . . does not support a finding of general jurisdiction over claims unrelated to these corporate activities.").

Mobius has not made a *prima facie* showing of general jurisdiction over Palmer in Texas.

### B.    Specific Jurisdiction

Specific jurisdiction exists "when a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Walk*, 517 F.3d at 243 (internal quotations marks omitted).  Mobius has made a *prima facie* showing of specific jurisdiction.  Mobius has alleged that Palmer fraudulently represented to Mobius, orally and in writing, that Global Clean would pay Mobius the amounts due under the Services Agreement to induce Mobius's continued performance.  The uncontroverted allegations in the complaint are that Palmer directed his representations to Mobius in Texas.  The content of the representations forms the basis of Mobius's fraud claim.  Under Fifth Circuit precedent, allegations of fraudulent representations directed to a forum-state resident are sufficient for a *prima facie* showing of specific jurisdiction.  *See Rossi v. Wohl*, 246 F. App'x 856, 858 (5th Cir. 2007) (holding that allegations that the defendants "communicat[ed] false information to the plaintiff in Texas" "are sufficient to raise a prima facie case of specific personal jurisdiction against the defendants"); *FCA Invs. Co. v. Baycorp Holdings, Ltd.*, No. 01-20717, 2002 WL 31049442, at *3 (5th Cir. Aug. 29, 2002) (holding that allegations that a nonresident defendant "used false assurances and misrepresentations made in, or sent to, Texas to induce" the plaintiff's detrimental reliance provide sufficient basis for exercising specific jurisdiction over that defendant); *Lewis*, 252

F.3d at 359 ("Lewis contends that all of the defendants intentionally defrauded him by lying about the ownership of the Nantucket Mad Martha's store. . . .  The 'actual content' of [the defendants'] communications to Lewis shows purposeful availment of the benefits and protections of Texas law."); *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 212–13 (5th Cir. 1999) (holding that allegations of "letters, faxes, and phone calls to Texas . . . whose contents contained fraudulent misrepresentations" provided a sufficient basis for exercising personal jurisdiction over the nonresident defendant who sent the communications); *see also Phoenix Mining & Mineral, L.L.C. v. Treasury Oil Corp.*, No. 5:06-cv-58, 2007 WL 951866, at *5 (S.D. Tex. Mar. 28, 2007) ("Plaintiff alleges that Organ made several direct communications with Plaintiff, the contents of which Plaintiff alleges were fraudulent. . . .  [S]ince the contents of these communications are the basis for Plaintiff's fraud claims, such are enough to show that Organ should have reasonably anticipated the possibility of litigation in Texas."); *Evercom Sys., Inc. v. Mannis*, No. 3:03-CV-2956-M, 2004 WL 396885, at *2 (N.D. Tex. Feb. 20, 2004) ("Plaintiff's allegations that [the defendants] made misrepresentations to Plaintiff, if true, would give rise to intentional torts, which are sufficient to be characterized as a purposeful availment of the privilege of conducting activities in Texas.").

Relying on the Texas Supreme Court's decision in *Michiana*, Palmer argues that "[a] plaintiff cannot establish specific personal jurisdiction over a defendant merely by alleging that the defendant made misrepresentations in communications directed to Texas." (Docket Entry No. 101, at 1.)  In *Michiana*, the defendant, a factory outlet store that did business only in Indiana, sold a $64,000 motor home to the plaintiff, a Texas resident, over the telephone.  168 S.W.3d at 781.  The plaintiff initiated the transaction by placing a telephone call from Texas to the defendant in Indiana, sent payment to Indiana, accepted delivery of the motor home in Indiana, and agreed to resolve any

disputes in Indiana. *Id.* at 784, 792. The plaintiff sued the defendant in Texas state court, asserting as the sole basis for personal jurisdiction misrepresentations allegedly made by the defendant in Indiana during the phone call. *Id.* at 784. The Texas Supreme Court held that "specific jurisdiction is [not] necessarily established by allegations or evidence that a nonresident committed a tort in a telephone call from a Texas number." *Id.* at 791–92. Distinguishing *Calder v. Jones*, 465 U.S. 783 (1984), the court noted that focusing on where the defendant allegedly directed a tort incorrectly emphasized the relationship among the *plaintiff*, the forum, and the litigation, rather than among the *defendant*, the forum, and the litigation. *Michiana*, 168 S.W.3d at 790. The court explained that looking at where an alleged "tort was directed," as opposed to the defendant's contacts with the forum relating to the subject matter of the litigation, improperly conflated the jurisdictional inquiry with the underlying merits determination because the nonresident defendant could defeat jurisdiction by showing that there was no tort. *Id.*

*Michiana* is both distinguishable on its facts and inconsistent with Fifth Circuit cases issued before and after it was decided. On the facts, the Services Agreement called for performance that includes significant work in Texas, including work that was the subject of the alleged misrepresentations. The Services Agreement called for payment in Texas. The Services Agreement also required the resolution of disputes in Texas, under Texas law.

On the law, *Michiana* turns on the Texas Supreme Court's interpretation of federal constitutional law. The Fifth Circuit's interpretation of that law is binding on this court. The Fifth Circuit has held that "[w]hen the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment. The defendant is

10

purposefully availing himself of 'the privilege of causing a consequence' in Texas."[1]  *Wien*, 195 F.3d at 213 (citation omitted).  *See also FCA Invs.*, 2002 WL 31049442, at *2 ("In cases alleging the intentional tort of fraud, the defendant's participation in a single telephone call is enough to establish personal jurisdiction if the content of the call gave rise to the fraud claim."); *Lewis*, 252 F.3d at 358–59 ("A single act by a defendant can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted."); c*f. J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2787 (2011) (plurality opinion) ("As a general rule, the sovereign's exercise of power requires some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws, though in some cases, as with an intentional tort, the defendant might well fall within the State's authority by reason of his attempt to obstruct its laws." (internal citation and quotation marks omitted)).  Courts in the Fifth Circuit have refused to follow *Michiana* over the above Fifth Circuit authority.  *See Staton Holdings, Inc. v. Hilton Apparel Grp.*, No. 3-07-CV-0383-BD, 2007 WL 1964635, at *4 (N.D. Tex. July 5, 2007) ("To the extent [*Michiana*] attempts to rewrite more than 25 years of Fifth Circuit jurisprudence, which holds that a single communication by a nonresident defendant aimed at the forum state is enough to satisfy the purposeful availment requirement of the due process minimum contacts inquiry where the content of the communication gives rise to a claim of fraud, the court declines to follow [*Michiana*]."); *Moody Nat'l Realty v. Ozark Mgmt., Inc.*, No. 4:07-cv-3239, 2008 WL 8082760, at

---

[1]  "There have been other cases where mere communications or negotiations with a resident of the forum state were not enough to subject non-resident defendants to the forum state's jurisdiction."  *Lewis*, 252 F.3d at 359.  Palmer cites two such cases: *Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291 (5th Cir. 1999), and *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.*, 700 F.2d 1026 (5th Cir. 1983).  "These cases did not, however, involve an intentional tort."  *Lewis*, 252 F.3d at 359.  In these cases, "the communications with the forum did not actually give rise to a cause of action.  Instead, the communications merely solicited business from the forum, negotiated a contract, formed an initial attorney-client relationship, or involved services not alleged to form the basis of the complaint."  *Wien*, 195 F.3d at 213. *Marathon Oil* and *Hydrokinetics* "are thus distinguishable from the present case."  *Id.*

11

*6 n.7 (S.D. Tex. Apr. 22, 2008) ("The Texas Supreme Court has refused to find jurisdiction based on a 'directed-a-tort' theory, noting, among other things, that jurisdiction should not turn on whether a Plaintiff sued in tort or contract.  The Court finds some of the Texas Supreme Court reasoning persuasive, but, as explained above, the Court is bound by the law of the Fifth Circuit with respect to personal jurisdiction." (internal citation omitted)).

Invoking the fiduciary-shield doctrine, Palmer argues that he is not subject to personal jurisdiction in Texas because his contacts with Texas "are not attributable to [him] in his individual capacity."  (Docket Entry No. 86, at 7.)  Under the fiduciary-shield doctrine, "an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual though the state has in personam jurisdiction over the corporation."  *Stuart*, 772 F.2d at 1197.  "Succinctly paraphrased, 'jurisdiction over an individual cannot be predicated upon jurisdiction over a corporation.'"  *Id.* n.11 (citation omitted).  Courts have held, however, that the doctrine "is inapplicable to corporate officers who, in their role as corporate agents, injure persons by virtue of their tortious activity even if such acts were performed within the scope of their employment as corporate officers."  *Digman v. Cummings*, No. 2:11–CV–91–J, 2011 WL 5822422, at *4 (N.D. Tex. Nov. 16, 2011).  "This rule is not based on an exception to the fiduciary shield doctrine, but rather on the well-established principle that 'a corporate officer is primarily liable for his own torts.'"  *Ennis v. Loiseau*, 164 S.W.3d 698, 707 (Tex. App.—Austin 2005, no pet.) (citation omitted).  "[I]f the evidence suggests that the nonresident officer participated in tortious or fraudulent activities, which were directed at Texas and for which he may be held personally liable, then there is a sufficient basis to assert specific jurisdiction over him."  *Id.* at 709.  Because Mobius has alleged that Palmer committed fraud—an intentional tort—the fiduciary-shield

12

doctrine does not bar the exercise of personal jurisdiction over him.  *See Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 777, 794–95 (5th Cir. 2007) (holding that the fiduciary-shield doctrine did not bar the exercise of personal jurisdiction over a nonresident defendant when the plaintiff alleged that the defendant induced it to purchase a franchise through fraudulent misrepresentations).

Palmer has not argued that if this court finds minimum contacts supporting specific personal jurisdiction, exercising that jurisdiction over him would offend traditional notions of fair play and substantial justice.  The record does not support such an argument.

## IV.    Conclusion

Palmer's Rule 12(b)(2) motion to dismiss, (Docket Entry No. 86), is denied.

SIGNED on February 22, 2012, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

13