**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| MOBIUS RISK GROUP, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-10-1708 |
| | § | |
| GLOBAL CLEAN ENERGY HOLDINGS, | § | |
| INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

Global Clean Energy Holdings, Inc., ("Global Clean"), has asserted breach-of-contract and fraudulent-inducement claims against Mobius Risk Group ("Mobius") for alleged mismanagement in performing the parties' Services Agreement. Under the Agreement, which began in August 2007, Mobius was to provide services to assist Global Clean in the business it was developing to grow, produce, manufacture, and sell seed oils from the *Jatropha curcas* plant for use as a biofuel. The present dispute concerns Global Clean's proof of its damages.

Global Clean computed its damages to include amounts resulting from an alleged seven-month delay in preparing land and an alleged three-month delay in planting *Jatropha curcas* plants for biodiesel production. Mobius has moved to exclude the lay-opinion testimony of Global Clean's Chief Executive Officer, Richard Palmer, on these damages. (Docket Entry No. 150). Mobius responded, and Global Clean replied. Based on the motion, the response, and reply; the parties' submissions; and the applicable law, this court denies the motion to exclude. The reasons are explained below.

## I.    Background

Global Clean previously provided Mobius a damages calculation that included amounts paid by other entities.  This court ruled that Global Clean was not entitled to recover damages for amounts it did not pay, (Docket Entry No. 95), and Global Clean revised its damages calculation. In its revised submission, Global Clean applied a monthly "burn rate" to calculate damages.  This burn rate was based on various Global Clean expenses for 2008, not charged to any particular project.  In calculating delay damages, Global Clean added the expenses, divided that total by 12 to calculate a monthly burn rate of $94,500.85, and then multiplied this amount by seven to calculate damages for land-preparation delays and by three to calculate damages for planting delays.  These two figures total over $945,000.

According to Global Clean's witness list, Palmer will give lay-opinion testimony at trial about the overhead expenses incurred as a result of the delays caused by Mobius's alleged mismanagement.  (Docket Entry No. 139, at 1–2).  Mobius deposed Palmer about the revised damages submission, including the overhead expenses used in the "burn rate" calculation and the documents Global Clean relied on to support the damages it claimed.  Mobius has moved to exclude Palmer's testimony, arguing that it does not meet the requirements for lay-opinion testimony under Federal Rule of Evidence 701.  (Docket Entry No. 150).  Mobius contends that: Palmer's testimony on "overhead" and "burn rate" amounts is not based on his personal knowledge; there is no rational connection between Palmer's opinions and the underlying information; his calculations are based on scientific, technical, or other specialized knowledge that Palmer admittedly lacks; and his testimony is not helpful to determining a fact in issue.  (*Id.* at 1–2).[1]

---

[1]  Mobius also objects to Palmer's testimony because certain documents Palmer used to determine the alleged delays were not produced until the day before or the day of Palmer's deposition.  (Docket Entry No. 150, at 2 n.2).  The court will not exclude Palmer's testimony on this basis.  Mobius was able to file a substantive motion to

2

Each argument is analyzed below.

## II.     The Rule 701 Standard

Federal Rule of Evidence 701 provides:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> > (a)  rationally based on the witness's perception;
> >
> > (b)  helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
> >
> > (c)  not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

FED. R. EVID. 701.[2]  Rule 701 permits a lay witness to offer opinion testimony when it is "based on personal perception," is an opinion "that a normal person would form from those perceptions," and would be "helpful" to the fact finder.  *Miss. Chem. Corp. v. Dresser–Rand Co.*, 287 F.3d 359, 373 (5th Cir. 2002) (citation and internal quotation marks omitted).  If the criteria for admissibility are

---

exclude Palmer's testimony, notwithstanding the asserted delay in producing certain documents.  The substance of Mobius's argument is that Palmer's testimony should be excluded because he does not personally know the amounts at issue and cannot extrapolate from them without expertise.  Mobius does not object on the ground that Palmer lacks the requisite knowledge of the lengths of the alleged delays.

[2]  Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> >
> > (b) the testimony is based on sufficient facts or data;
> >
> > (c) the testimony is the product of reliable principles and methods; and
> >
> > (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702.

met, alleged flaws in a lay-opinion witness's perception are more appropriately addressed through cross-examination than through exclusion for inadmissibility under Rule 701.  *See, e.g.*, *Asplundh Mfg. Div. v. Benton Harbor Eng'g*, 57 F.3d 1190, 1199 (3d Cir. 1995) ("[T]he witness's opinion was rationally based on his personal knowledge and . . . the witness's inability to state precisely why a furnace was inoperable at a particular time was proper material for cross-examination rather than a basis for inadmissibility."  (citing *Joy Mfg. Co. v. Sola Basic Indus., Inc.*, 697 F.2d 104, 110–12 (3d Cir. 1982))); *see also Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co.*, 320 F.3d 1213, 1221 (11th Cir. 2003) ("[I]n *United States v. Myers*, 972 F.2d 1566, 1577 (11th Cir. 1992), . . . . the officer's testimony was rationally based on his personal perception of the victim's back and his nineteen years of experience in the police force. . . .  [T]o the extent that the witness's opinion lacked a technical/medical basis, the defendant had the opportunity to expose this on cross-examination and the defendant's objections more properly went to the weight and not the admissibility of the evidence." (alterations, citations, and internal quotation marks omitted)).

"[A]n officer or employee of a corporation may testify to industry practices and pricing [under Rule 701] without qualifying as an expert [under Rule 702]."  *Tex. A & M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 403 (5th Cir. 2003) (citing *Tampa Bay*, 320 F.3d at 1223 (11th Cir. 2003)); *see also Nat'l Hispanic Circus, Inc. v. Rex Trucking, Inc.*, 414 F.3d 546, 551–52 (5th Cir. 2005) ("Rule 701 does not exclude testimony by corporate officers or business owners on matters that relate to their business affairs, such as industry practices and pricing.").

> Although Rule 701 was amended in 2000 to prohibit lay witnesses from offering opinions based on "scientific, technical or other specialized knowledge within the scope of Rule 702 [expert evidence]," . . . the amendment did not place any restrictions on the preamendment practice of allowing business owners or officers to testify based on personal knowledge obtained from their position and experience.

4

*Rimkus Consulting Grp. v. Cammarata*, Civ. A. No. H–07–0405, 2009 WL 1269710, at *5 n.1 (S.D.
Tex. May 7, 2009) (alteration in original) (citing *Tampa Bay Shipbuilding*, 320 F.3d at 1222–23).
A corporate owner or officer, for example, generally may testify about lost profits under Rule 701
"if the witness has direct knowledge of the business accounts underlying the profit calculation."
*Miss. Chem. Corp.*, 287 F.3d at 373 (allowing corporation's director of risk management to testify
to lost profits); *see also Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 265 (2d Cir. 1995)
("[A] president of a company . . . has personal knowledge of his business . . . sufficient to
make . . . him eligible under Rule 701 to testify as to how lost profits could be calculated.") (internal
citations and quotation marks omitted); *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1175 (3d
Cir. 1993) (allowing Rule 701 testimony by the owner of a corporation as to the amount of lost
profits); *In re Merritt Logan, Inc.*, 901 F.2d 349, 359 (3d Cir. 1990) (allowing Rule 701 testimony
by the principal shareholder of the plaintiff concerning that company's lost profits).

Rule 701 does not give a corporate owner or officer free rein.  An owner who applies his
business acumen to matters outside his direct knowledge to form his opinion is subject to Rule 702
scrutiny.  In *Compania Administradora de Recuperacion de Activos Administradora de Fondos de
Inversion S.A. v. Titan International, Inc.*, 533 F.3d 555 (7th Cir. 2008), for example, the Seventh
Circuit held that a CEO's opinion valuing certain collateral was subject to Rule 702 rather than Rule
701:

> [CEO] Taylor purported to value the collateral by applying his
> generalized knowledge of the worldwide tire market, gained through
> his experience in the worldwide tire business, to a proffered list of
> specific items owned by a third party.  Taylor's only connection to
> the items in question is the fact that he is an officer of a company
> that, at one time, held a controlling interest in a company that, at one
> time, owned the collateral. Titan, however, had no ownership interest
> in FUNSA[, the company that originally owned the collateral,] at the
> time that Taylor made his purported valuation.  Furthermore, Titan

5

> identifies no evidence that Taylor participated in FUNSA's initial purchase of the particular items in question, and his affidavit belies any contention that he based his valuation opinion on personal knowledge of the collateral.  Indeed, in his deposition, Taylor specifically disclaimed any personal knowledge of the particular items that were included in the sale.

*Id.* at 560.  Taylor's opinion was Rule 702 expert testimony because his valuation "was not based on any knowledge obtained through his special relationship with the items in question; instead, he simply looked at a list of items provided by Compania, and he estimated their value based on his extensive experience purchasing and selling the type of goods at issue."  *Id.*  "This is the kind of testimony traditionally provided by an expert: '[I]t could have been offered by any individual with specialized knowledge of the [tire] market.'"  *Id.* (alterations in original) (quoting *United States v. Conn*, 297 F.3d 548, 555 (7th Cir. 2002)).

Even when a business owner or officer bases a damages calculation on knowledge of that business's own accounts, the calculation method applied must be based on personal experience as an owner or officer.  *See, e.g.*, *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 930 (10th Cir. 2004) ("Instead of limiting Mr. Livingston's testimony to his experience as a businessperson and president of the company . . . LifeWise had him enter into the realm of rolling averages, S-curves, and compound growth rates that appear to be an amalgam of logic, hope, and economic jargon." (alterations, citations, and internal quotation marks omitted)).  Rule 701 "expressly prohibits the admission of testimony as lay witness opinion if it is based on 'specialized knowledge.'  In other words, 'a person may testify as a lay witness only if his opinions or inferences do not require any specialized knowledge and could be reached by any ordinary person.'"  *Id.* (citation omitted) (quoting *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 460 (5th Cir. 1996)).  In *LifeWise*, a corporate president—who was not an accountant, economist, or statistician—was properly prevented from

testifying under Rule 701 because he did not have "personal knowledge of the factors used by LifeWise's fourth damages model to estimate its lost profits," which included "technical, specialized subjects" such as "moving averages, compounded growth rates, and S-curves."  374 F.3d at 929, 930.  Rule 701 limited the president's damages opinion to one generated by "using conventional methods based on LifeWise's actual operating history."  *Id.* at 930.

## III.   Analysis

Mobius argues first that Palmer lacks sufficient personal or direct knowledge of the items underlying his calculations for his damages testimony to qualify for admission under Rule 701. Mobius argues that the summary of charges used to calculate the "overhead" and "burn rate" amounts was created by Global Clean's controller, not by Palmer himself.   But Mobius acknowledges that the controller assembled the list at Palmer's specific request to produce "all direct costs incurred by [Global Clean] during calendar year 2008.  (Docket Entry No. 150, at 4).  The costs that went into the burn-rate calculation were within Palmer's direct knowledge.  To produce the summary, he identified a range of Global Clean expenses, for a year he targeted as relevant, instructed a subordinate to summarize those expenses, and verified them as accurate.  (Docket Entry No. 150, Ex. A, Palmer Dep., at 61–64).  Palmer's direct knowledge of his business led him to select these costs to calculate Global Clean's damages.  This was direct, personal knowledge, within the criteria for lay-opinion testimony under Rule 701.  *See Miss. Chem. Corp.*, 287 F.3d at 373; *Securitron*, 65 F.3d at 265.[3]

---

[3] Mobius also argues that Palmer "did not look at the universe of direct costs incurred by [Global Clean] and he did not make the initial determination of which costs to include."  (Docket Entry No. 150, at 4–5).  Palmer did not  review all the expenses for 2008.  Instead, he requested a list of only "ones that represent the overhead component and the costs associated with operating Global Clean Energy Holdings that was not reimbursed by a project in 2008."  (Docket Entry No. 150, Ex. A, at 63–64).  Mobius argues that Palmer lacked knowledge of the costs he did review because he  chose not to review costs he told his subordinate were irrelevant.  This argument is somewhat circular and unpersuasive, given that Palmer explained the basis for identifying the costs to review.

Mobius argues that in his deposition, Palmer could not "identify the nature of many of the amounts included in the 'overhead' calculation, including those for Ocean Park Advisors, LLC, ZNAT Insurance Company, First Insurance Funding Corp., and Osborne, Robbins & Buhler, PLLC." (Docket Entry No. 150, at 5).  The court has reviewed Palmer's deposition.  His answers do not reflect detailed knowledge of the line items Mobius cited.  But Palmer was able to identify each of them as a Global Clean cost and describe in general terms roughly what it was for.  Palmer explained that Ocean Park Advisors did "advisory work" for Global Clean; that ZNAT Insurance "would have to do something with [Global Clean] insurance"; that the First Insurance Funding expense was presumably "an insurance payment"; and that the Osborne, Robbins & Buhler item was a legal expense, although Palmer could not recall the specific legal service provided without a copy of the invoice in front of him.  (Docket Entry No. 150, Ex. A, at 69, 71, 74, 77).

Although these responses do not show a comprehensive or detailed recollection of the circumstances under which Global Clean incurred each expense, they do reflect sufficient knowledge for Rule 701 purposes.  Palmer confirmed that each was a Global Clean expense.  He based his opinion on his own company's actual expenditures rather than on external or hypothetical expenses.  *See, e.g.*, *Compania Administradora*, 533 F.3d at 560.  Any vagueness in Palmer's recollection can be explored in cross-examination at trial and does not require wholesale exclusion of the opinion testimony.

Mobius argues next that Palmer's testimony, and the "overhead" and the monthly "burn rate" methods he used for calculating damages, are not rational or logical and therefore fail to meet the Rule 701 requirements.  (Docket Entry No. 150, at 5).  Mobius's argument appears to be that the list of purported overhead expenses is overbroad:

For example, included in the "overhead" amounts are payments to,

8

among others, (i) Lodemo, which was working on the project at issue in this case, (ii) Stewart Title, for land title work specific to a project, (iii) Biodiesel Cambodia, for the purchase of seeds for a project, and (iv) an attorney for work done to maintain patents for a specific portfolio of assets purchased by [Global Clean].

(*Id.* at 6 (citing Docket Entry No. 150, Ex. A, at 70–71, 74, 76–77)).[4]  Mobius also complains that the overhead and burn-rate calculations were based on 2008 expenses "despite the fact that [Palmer] asserts that the delays were realized in 2010" and that the overhead amounts "are not attributable to any specific period."  (*Id.*)

The record does not support Mobius's argument that there is no rational or logical relationship between the information Palmer relied on and the opinion he expressed.  Palmer's reason for selecting the expenses included in the damages calculation was that "[t]he result of the work activities in 2008 caused a delay in the completion of the planting which pushed it into 2010. . . .  So the end result of the planting delay was not fully realized or seen until the end of the planting period."  (Docket Entry No. 150, Ex. A, at 48).  Palmer had a list prepared that showed "all of the costs that [Global Clean] incurred directly during calendar year 2008" and "exclude[d] ones that were reimbursed by GCE Mexico or others.  Palmer explained that these were not "all the payments that were made during calendar year 2008 by Global" but rather "the ones that represent the overhead component and the costs associated with operating Global Clean Energy Holdings that was not reimbursed by a project in 2008."  (*Id.* at 63–64).  Palmer's explanation makes it difficult for this court to find that, as Mobius argues, so many of the overhead expenses were improperly included as to require exclusion of his entire opinion under Rule 701.  Instead, the criticism that

---

[4]  Mobius also alleges that the overhead costs allegedly include an expense paid not by Global Clean, but rather by GCE Mexico I, LLC, and therefore not attributable to damages under this court's previous order.  (Docket Entry No. 150, at 6; *see also* Docket Entry No. 95).  This expense should not be included in the calculation.

certain expenses were improperly included in the damages calculation goes to the weight to be given the opinion and can properly be explored on cross-examination.

Mobius argues that Palmer's testimony is improper because his opinions are based at least in part on specialized knowledge that he admittedly lacks. But Palmer's calculations are, at bottom, arithmetic, not requiring "'specialized knowledge.'" *LifeWise*, 374 F.3d at 929 (quoting *Doddy*, 101 F.3d at 460). These calculations are not like those held inadmissible in *LifeWise*, which were based on specialized statistical, economic, or accountancy knowledge. *See id.* Palmer's lack of knowledge in these fields does not bar his testimony under Rule 701.

Finally, Mobius argues that Palmer's opinions are unhelpful and would mislead the jury, based on Palmer's lack of personal knowledge or expertise to testify about the Global Clean damages calculation. (Docket Entry No. 150, at 7). This argument fails for the same reasons the previous arguments were unpersuasive.

## IV.   Conclusion

Mobius's Motion to Exclude Testimony of Richard Palmer, (Docket Entry No. 150), is denied.

SIGNED on October 17, 2012, at Houston, Texas.

Lee H. Rosenthal
United States District Judge